Christopher J. Kayser (OSB #984244)
ckayser@lvklaw.com
David G. Samuels (OSB #206308)
dsamuels@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

*Attorneys for [Proposed] Intervenor*
*Oregon Primary Care Association*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, | Case No. 3:25-cv-01754-IM |
| Plaintiff, | PROPOSED INTERVENOR OREGON PRIMARY CARE ASSOCIATION'S MOTION TO INTERVENE |
| v. | |
| DAN RAYFIELD, in his official capacity as Attorney General of the State of Oregon; RICHARD JOYCE, in his official capacity as President, Oregon Board of Pharmacy; AMY KIRKBRIDE, in her official capacity as Vice President, Oregon Board of Pharmacy; KATHLEEN CHINN, in her official capacity as Member, Oregon Board of Pharmacy; JENNIFER HALL, in her official capacity as Member, Oregon Board of Pharmacy; VICTORIA KROEGER, in her official capacity as Member, Oregon Board of Pharmacy; PRIYA PATEL, in her official capacity as Member, Oregon Board of Pharmacy; ANA PINEDO, in her official capacity as Member, Oregon Board of Pharmacy; and BRYAN SMITH, in his official capacity as Member, Oregon Board of Pharmacy, | |
| Defendants. | |

PROPOSED INTERVENOR OREGON PRIMARY CARE
ASSOCIATION'S MOTION TO INTERVENE

OREGON PRIMARY CARE ASSOCIATION,

     [Proposed] Intervenor.

# TABLE OF CONTENTS

CERTIFICATION ............................................................................................... 1

MOTION ............................................................................................................. 1

MEMORANDUM OF LAW ............................................................................... 1

BACKGROUND ................................................................................................. 3

I.      Factual Background ................................................................................ 3

II.     Legal Background ................................................................................... 4

        A.      Intervention .............................................................................. 4

                1.      Mandatory Intervention ................................................ 4

                2.      Permissive Intervention ................................................ 6

                3.      Timeliness ..................................................................... 7

        B.      The 340B Program and 340B Drug Distribution ..................... 7

        C.      Restrictive Manufacturer Policies ......................................... 10

        D.      Oregon H.B. 2385 .................................................................. 12

ARGUMENT .................................................................................................... 13

I.      OPCA's Motion to Intervene is Timely ............................................... 13

II.     OPCA Is Entitled to Intervene as of Right .......................................... 18

        A.      OPCA Has an Interest Relating to the Property or Transaction That Is the Subject of This Action ........................................... 18

        B.      OPCA's Interests Will Be Impaired by the Disposition of the Litigation 21

        C.      OPCA's Interests Are Not Adequately Protected by the Parties ............. 23

III.    OPCA Satisfies the Standards for Permissive Intervention Under FRCP 24(b)(2) .................................................................................................... 26

        A.      Intervention Will Not Cause Undue Delay or Prejudice ......................... 27

        B.      OPCA Brings a Claim or Defense That Shares a Common Question of Law or Fact ............................................................................. 28

C.    Other Discretionary Factors Support Permissive Intervention ................. 29

CONCLUSION............................................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AbbVie v. Landry*,
No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024) .................................................................. 20, 23, 26

*AbbVie v. Rayfield*,
No. 6:25-cv-01332 (D. Or. 2025) ............................................................................................ 17

*Abdurahman v. Alltran Fin., LP*,
330 F.R.D. 276 (S.D. Cal. 2018) ................................................................................. 15, 16, 17

*Allied Concrete & Supply Co. v. Baker*,
904 F.3d 1053 (9th Cir. 2018) ................................................................................................ 25

*Ambler v. Flathead Conservation Dist.*,
No. CV 23-151-M-KLD, 2024 WL2723954, at *2 (D. Mont. May 28, 2024) ........................ 17

*AstraZeneca Pharmaceuticals v. Rayfield*,
No. 3:25-cv-02042 (D. Or. 2025) ............................................................................................ 17

*Audubon Soc'y of Portland v. Jewell*,
No. 1:17-cv-00069, 2017 WL 9471665, at *5 (D. Or. Mar. 27, 2017) .............................. 27, 28

*Bresgal v. Brock*,
637 F. Supp. 271 (D. Or. 1985) .............................................................................................. 18

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) ................................................................................................ 25

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ................................................................... 5, 6, 21, 22, 23, 24, 26

*City of Emeryville v. Robinson*,
621 F.3d 1251 (9th Cir. 2010) ................................................................................................ 18

*Day v. Apoliona*,
505 F.3d 963 (9th Cir. 2007) .................................................................................................. 14

*Droplets, Inc. v. Yahoo! Inc.*,
No. 12-CV-03733-JST, 2019 WL 9443778 (N.D. Cal. Nov. 19, 2019) .................................. 18

*E. Bay Sanctuary Covenant v. Biden*,
102 F.4th 996 (9th Cir. 2024) ................................................................................................ 20

*EEOC v. Logic Staffing LLC,*
   No. 2:24-cv-1557-BJR, 2025 WL 835032 (W.D. Wash. Mar. 17, 2025) .................................. 15

*Forest Conservation Council v. U.S. Forest Serv.,*
   66 F.3d 1489 (9th Cir. 1995) ................................................................................................ 5, 25

*Genesis Health Care, Inc. v. Becerra,*
   701 F. Sup. 3d 312 (D.S.C. 2023) ........................................................................................... 8, 9

*Harris v. City of L.A.,*
   No. EDCV 24-2679 JGB (DTBx), 2025 WL 1717650 (C.D. Cal. Apr. 30, 2025) ................... 15

*Idaho Farm Bureau Fed'n v. Babbitt,*
   58 F.3d 1392 (9th Cir. 1995) ................................................................................................ 14, 19

*Idaho v. Freeman,*
   625 F.2d 886 (9th Cir. 1980) ...................................................................................................... 19

*Innovations4Flooring Holding, N.V. v. Wellmade Flooring Coverings, Int'l, Inc.,*
   No. 3:19-cv-00299-HZ, 2019 WL 13269517 (D. Or. Oct. 7, 2019) ......................................... 17

*Kalbers v. United States Dep't of Justice,*
   22 F.4th 816 (9th Cir. 2021) ................................................................................................ 14, 15

*Kootenai Tribe of Idaho v. Veneman,*
   313 F.3d 1094 (9th Cir. 2002) .............................................................................................. 28, 29

*League of United Latin Am. Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) .................................................................................................... 14

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
   591 U.S. 657 (2020) ................................................................................................................... 24

*Lockyer v. United States,*
   450 F.3d 436 (9th Cir. 2006) ...................................................................................... 5, 19, 21, 24

*Martin v. La Luz Del Mundo,*
   2:20-cv-01437-ODW-(ASx), 2020 WL 5797896 (C.D. Cal. Sep. 29, 2020) ........................... 17

*McConnell v. FEC,*
   540 U.S. 93 (2003) ..................................................................................................................... 24

*NAACP v. New York,*
   413 U.S. 345 (1973) ................................................................................................................... 15

*Novalpina Cap. Partners v. Read,*
   149 F.4th 1092 (9th Cir. 2025) ........................................................................................ 26, 29, 30

*Novartis Pharmaceuticals v. Joyce*,
    No. 3:25-cv-01330 (D. Or. 2025).............................................................................. 17

*Novartis Pharms. Corp. v. Johnson*,
    102 F.4th 452 (D.C. Cir. 2024) ............................................................................... 11

*Nw. Env't Advocs. v. U.S. Env't Prot. Agency*,
    No. 3:12-cv-01751, 2014 WL 1094981 (D. Or. Mar. 19, 2014)................................. 6

*Or. Prescription Drug Monitoring Program v. United States Drug Enf't Admin.*,
    No. 3:12-cv-02023, 2013 WL 12325112 (D. Or. Mar. 31, 2013)................................ 7

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009)................................................................................... 27

*Pharm. Rsch. & Mfs. of Am. v. McClain*,
    4:21-cv-00864 (E.D. Ark. May 3, 2022).................................................................. 20

*Pharmaceutical Researchers and Manufacturers of America v. Rayfield*,
    No. 3:25-cv-01754 (D. Or. 2025).............................................................................. 17

*Sage Electrochromics, Inc. v. View, Inc.*,
    No. 12-cv-06441-JST, 2013 WL 6139713 (N.D. Cal. Nov. 21, 2013)...................... 18

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)............................................................................ 18, 19

*Sanofi Aventis U.S. LLC v. HHS*,
    58 F.4th 696 (3d Cir. 2023)..................................................................................... 11

*SFR Invs. Pool 1, LLC v. Newrez LLC*,
    No. 2:22-cv-00626-GMN-EJY, 2023 WL 3341918 (D. Nev. May 10, 2023)........... 18

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016)............................................................... 5, 7, 13, 15, 18

*Smith v. Pangilinan*,
    651 F.2d 1320 (9th Cir. 1981)................................................................................. 23

*Spangler v. Pasadena City Bd. of Educ.*,
    552 F.2d 1326 (9th Cir. 1977)........................................................................... 26, 30

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001)............................................................... 5, 6, 22, 23, 24

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004)........................................................................ 7, 13, 20

*United States v. Brooks*,
   163 F.R.D. 601 (1995) ........................................................................... 20

*United States v. Brooks*,
   164 F.R.D. 501 (D. Or.) ....................................................................... 20

*United States v. Chicago*,
   870 F.2d 1256 (7th Cir. 1989) .............................................................. 14

*United States v. State of Or.*,
   745 F.2d 550 (9th Cir. 1984) ....................................................... 7, 13, 14

*United States v. State of Or.*,
   839 F.2d 635 (9th Cir. 1988) ....................................................... 6, 21, 23

*United States v. Washington*,
   86 F.3d 1499 (9th Cir. 1996) ................................................................ 15

*Washington v. FDA*,
   108 F.4th 1163 (9th Cir. 2024) ............................................................. 24

*Western Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ................................................................ 17

*WildEarth Guardians v. U.S. Forest Serv.*,
   573 F.3d 992 (10th Cir. 2009) .............................................................. 24

*Wilderness Soc. v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ................................................................ 6

**Statutes**

42 U.S.C. §§ 254b, 256b(a)(4)(A) ............................................................ 3

42 U.S.C. § 254b(b)(1)(A)(i)(V) .............................................................. 3

42 U.S.C. § 256b(a)(1) ............................................................................ 7

H.B. 2385 ............................... 1, 2, 4, 11, 12, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, 30

H.B. 2385 § 1(2)(a) ................................................................................ 12

H.B. 2385 § 1(2)(b) ................................................................................ 12

H.B. 2385 § 2 ......................................................................................... 12

**Rules**

Fed. R. Civ. P. 24 ........................................................................................ 2, 5, 7, 13

Fed. R. Civ. P. 24(a) .......................................................................... 2, 4, 5, 26, 28, 30

Fed. R. Civ. P. 24(a), (b)(1) ......................................................................... 7, 13

Fed. R. Civ. P. 24(a)(2) ............................................................................ 1, 5, 22

Fed. R. Civ. P. 24(b) ............................................................... 2, 6, 26, 28, 29, 30

Fed. R. Civ. P. 24(b)(1), (b)(1)(B) .................................................................... 6

Fed. R. Civ. P. 24(b)(1)(B) ............................................................. 1, 26, 28, 29

Fed. R. Civ. P. 24(b)(3) ............................................................................... 27

LR 7-1 ..................................................................................................... 1

LR 7-2(b) ............................................................................................... 28

**Federal Registers**

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549 (Aug. 23, 1996) ........................................................ 9

**Other Authorities**

2025 Special August Board Meeting Summary, Oregon Board of Pharmacy (Aug. 20, 2025), https://www.oregon.gov/pharmacy/Documents/August_20_2025_Special_Bd_Meeting_Summary.pdf ........................................................................................ 16

340B ESP Resources, 340B ESP, https://www.340besp.com/resources (last visited Dec. 10, 2025) ............................................................................................. 10, 20

AbbVie, Contract Pharmacy Policy (Nov. 1, 2025), https://340besp.com/resources/abbvie/policy.pdf ........................................................ 10

AstraZeneca, 340B Contract Pharmacy Pricing (Aug. 17, 2020), https://www.340bhealth.org/files/AstraZeneca_Retail_Communication_-_340B_-_Final.pdf?_zs=Ccipc1&_zl=DaI27 ...................................................... 10

Contract Pharmacy Restrictions Tracker, 340B Report (last visited Dec. 10, 2025) https://340breport.com/contract-pharmacy-restrictions-tracker/ ....................................... 10, 21

Email from Bristol Myers Squibb to 340B Customers (Jan. 14, 2022),
     https://www.340bhealth.org/files/Bristol_Myers_Squibb_email_01-14-22.pdf ...................... 21

H.R. Rep. No. 102-384, pt. 2, at 12 (1992) ................................................................................. 8

HRSA, FAQ: Contract Pharmacy, What is a "ship to bill to" arrangement? (last visited Dec. 12,
     2025), https://www.hrsa.gov/opa/faqs ............................................................................ 9

Letter from Carole Johnson, Adm'r, HRSA, to Chris Compisi, Vice President, AbbVie, Inc.
     (Oct. 17, 2022), https://www.hrsa.gov/sites/default/files/hrsa/opa/programintegrity/hrsa-letter-
     abbvie-covered-entities.pdf ...................................................................................... 11

Letter from Diana Espinosa, Acting Adm'r, HRSA, to Dan Lupock, Managed Market Finance,
     Novartis Pharms. Corp. (May 17, 2021),
     https://www.hrsa.gov/sites/default/files/hrsa/opa/hrsa-letter-novartis-pharmaceuticals-covered-
     entities.pdf ....................................................................................................... 10

Notice Regarding Bristol Myers Squibb 340B Practice, Bristol Myers Squibb (July 10, 2025),
     https://340besp.com/resources/bristol_myers_squibb/policy.pdf ............................................ 21

Or. Bd. of Pharmacy, 2025 Special August Board Meeting (Aug. 20, 2025),
     https://www.oregon.gov/pharmacy/Documents/August_20_2025_Special_Bd_Meeting_Summ
     ary.pdf ............................................................................................................ 25

Order Granting Oregon Primary Care Association's Unopposed Motion to Intervene as a Matter
     of Right, *AstraZeneca v. Rayfield*, No. 3:25-cv-02042-MO(D. Or. Dec. 17, 2025) ................... 2

Sobi, Inc., 340B Contract Pharmacy Pricing (Nov. 1, 2025),
     https://340besp.com/resources/sobi/policy.pdf .......................................................... 11

Sumitomo Pharma, 340B Contract Pharmacy Pricing (July 17, 2025),
     https://340besp.com/resources/sumitomo/policy.pdf ..................................................... 11

## CERTIFICATION

Pursuant to LR 7-1, counsel for proposed Intervenor Oregon Primary Care Association ("OPCA") certifies that they have conferred with counsel for the other parties to this action. Plaintiff opposes this motion, and Defendants do not oppose intervention.

## MOTION

OPCA respectfully moves under Federal Rule of Civil Procedure ("FRCP") 24(a)(2) to intervene in this action as of right and alternatively under FRCP 24(b)(1)(B) for permissive intervention. In support of this motion, OPCA relies on the Declaration of Claire Tranchese ("Tranchese Decl.") and the Declaration of David Samuels ("Samuels Decl."), filed herewith and the points and authorities discussed below. The Court has indefinitely deferred Defendants' deadline to file an answer to Plaintiff's complaint. ECF No. 31. OPCA is ready to file an answer "if the Court determines it is necessary after reviewing the parties' motions for summary judgment." Joint Stipulation and Proposed Order, ECF No. 24. OPCA is prepared to file a cross-motion for summary judgment by January 16, 2026, as required by the Court's briefing schedule, or at a later date if the Court so orders. ECF No. 31.

## MEMORANDUM OF LAW

OPCA seeks to intervene in this action to defend H.B. 2385, which protects the delivery of discounted drugs purchased by OPCA members and other Oregon safety-net providers that participate in the federal 340B drug pricing program ("340B Program"). Specifically, H.B. 2385 protects the right of 340B Program participants, referred to in the 340B statute as "covered entities," to have their 340B-purchased drugs dispensed through third-party pharmacies without interference from drug manufacturers. Intervention by OPCA is necessary because no covered entity is currently a party to this case, the outcome of which will have a significant impact on the financial stability of OPCA's members and their ability to fulfill their missions of providing

comprehensive primary care and needed medications to all Oregonians, regardless of ability to pay.

Plaintiff opposes OPCA's intervention, and Defendants do not oppose OPCA's intervention. OPCA notes that it recently moved to intervene in two related cases that are before this Court. Unopposed Motion to Intervene, *AbbVie, Inc. v. Rayfield*, No. 6:25-cv-01332-IM (D. Or. Nov.21, 2025), ECF No. 47; Unopposed Motion to Intervene, *AstraZeneca v. Rayfield*, No. 3:25-cv-02042-MO (D. Or. Dec. 12, 2025), ECF No. 24. The Plaintiffs in those cases did not oppose OPCA's intervention, presumably because they recognized that OPCA satisfies the standards for intervention under FRCP 24. Indeed, Judge Mosman recently granted intervention in the *AstraZeneca* case. Order Granting Oregon Primary Care Association's Unopposed Motion to Intervene as a Matter of Right, *AstraZeneca v. Rayfield*, No. 3:25-cv-02042-MO (D. Or. Dec. 17, 2025), ECF No. 27.

OPCA represents the interests of the law's intended beneficiaries. H.B. 2385 is intended to enable Oregon covered entities to direct shipment of 340B drugs to third-party pharmacies with which they contract. OPCA members participate in the 340B Program and rely on these contract pharmacy arrangements to dispense drugs on their behalf so they can provide more services and treat more patients. OPCA also has an interest in this litigation because it participated in the drafting of H.B. 2385 and advocated extensively for its enactment.

OPCA is entitled to intervene under FRCP 24(a) because (1) its motion is timely; (2) it has a significant interest in the subject matter of this action; (3) its significant interest could be impaired by the disposition of the litigation; and (4) no party completely and adequately represents its interests. Alternatively, OPCA requests that the Court grant permissive intervention under FRCP 24(b) because OPCA has claims and defenses that share common

questions of law and fact with the action, and its intervention will not cause undue delay or prejudice to the parties.

## **<u>BACKGROUND</u>**

### I.     **Factual Background**

OPCA is a non-profit association with thirty-three community health center members that provide comprehensive primary health care services to over 470,000 Oregonians across more than 270 service locations.  Ex. 1, Tranchese Decl. ¶ 3.  In a survey conducted by OPCA in September 2020, thirteen of OPCA's members responded and described how they invest every penny of 340B savings back into the communities they serve through programming such as housing, prescription assistance, dental care, behavioral health, case management, clinical pharmacy, and clinical site expansion.  *Id.* ¶ 7.  Without the 340B Program, it would be difficult for OPCA's members to provide these community services because the services are either undercompensated or uncompensated by third party payers.  *Id.*

Each OPCA member participates in the 340B Program.  *Id.* ¶ 5.  The members participate in the 340B Program as the result of being either a Federally Qualified Health Center ("FQHC") that receives federal funding under Section 330 of the Public Health Service Act or an FQHC "look-alike" that is subject to Section 330 requirements but receives no grant funding.  42 U.S.C. §§ 254b, 256b(a)(4)(A); *id.* § 1396d(l).  As FQHCs or FQHC look-alikes, OPCA members are legally obligated to care for any patient regardless of the patient's ability to pay.  Importantly, Section 330 contains several requirements, including a requirement that health centers provide "pharmaceutical services as may be appropriate . . . ."  *Id.* § 254b(b)(1)(A)(i)(V).  Thirteen of OPCA's members do not have their own in-house pharmacies.  Tranchese Decl. ¶ 6. Instead, they rely on contracts with third-party community-based pharmacies to order, receive, and dispense self-administered medications for their patients.

PROPOSED INTERVENOR OREGON PRIMARY CARE                                  Page 3
ASSOCIATION'S MOTION TO INTERVENE

Drug manufacturers' restrictions on the use of contract pharmacy arrangements have caused direct and irreparable harm to OPCA's members. *Id.* ¶ 8. OPCA surveyed its members a second time (after the September 2020 survey) regarding financial loss due to the restrictions, and the fourteen members that responded reported a combined loss in 340B savings of $10.5 million in 2023. *Id.* ¶ 10. OPCA members have also been forced to change therapeutic options for patients and have less revenue to expand access to care due to the manufacturer restrictions. *Id.* ¶ 8. The manufacturer restrictions directly harm patients who formerly were able to obtain drugs at 340B discounted prices at multiple contract pharmacies. *Id.* ¶ 9. For covered entities that pass some or all of the savings from 340B on to patients, the loss of those savings means that patients must pay full price for their medications. *Id.* ¶ 9. And in some cases, covered entities have continued to provide discounts to patients placing significant financial strain on clinics and reducing access to affordable care. *Id.* ¶ 9.

OPCA sought relief from the contract pharmacy restrictions by working with the Oregon legislature to pass H.B. 2385. *Id.* ¶ 11. The organization directly participated in drafting H.B. 2385, working with lawmakers, legislative attorneys, and legislative staff to provide technical expertise. *Id.* ¶ 11. OPCA also took more than 120 "advocacy actions" including phone calls, letters, emails, and meetings with lawmakers. *Id.* ¶ 12. OPCA staff members also engaged in targeted, individualized advocacy efforts by speaking directly with legislators to educate them on the need for H.B. 2385. *Id.* ¶ 13.

## II.     Legal Background

### A.     Intervention

#### 1.     Mandatory Intervention

Under FRCP 24(a), a party may intervene as a matter of right if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that

disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). FRCP 24(a) thus requires a proposed intervenor to satisfy a four-part test: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817–18 (9th Cir. 2001).

The Ninth Circuit has a broad policy "in favor of intervention" and has made clear that intervention motions under FRCP 24 are to be liberally construed. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016). Doubts as to whether intervention is appropriate are to be resolved "in favor of intervention." *Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1493 (9th Cir. 1995). In addition, intervention "review is guided primarily by practical considerations, not technical distinctions." *Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Berg*, 268 F.3d at 818).

FRCP 24(a)(2) requires only that an intervenor "'claim[] an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . .'" *Citizens for Balanced Use*, 647 F.3d at 897 (quoting Fed. R. Civ. P. 24(a)(2)). A person claiming an interest in the litigation need not wait until he or she has suffered irreparable harm to meet the requirements of FRCP 24(a). *Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir.

2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."); *Citizens for Balanced Use*, 647 F.3d at 900 ("[I]ntervention of right does not require an absolute certainty that a party's interests will be impaired.").  If an adverse ruling would have a negative stare decisis effect on a proposed intervenor's interests, that impact would provide the requisite type of impairment to warrant intervention of right.  *See Berg*, 268 F.3d at 822 (allowing intervention when an intervenor would be substantially affected in a practical sense by the determination made in an action) (quotation omitted); *United States v. State of Or.*, 839 F.2d 635, 638 (9th Cir. 1988) ("[A] stare decisis effect is an important consideration in determining the extent to which an applicant's interest may be impaired.").

A proposed intervenor typically has a minimal burden of showing that its interests are not adequately represented by the parties.  *Citizens for Balanced Use*, 647 F.3d at 898 ("The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."); *id.* at 900 ("[I]ntervention of right does not require an absolute certainty that . . . existing parties will not adequately represent its interests.").  A proposed intervenor can rebut the general presumption that the government is adequately representing its interests by showing that its interests "may diverge" from, or conflict with, the government's interests.  *Berg*, 268 F.3d at 823.

### 2. Permissive Intervention

Permissive intervention under FRCP 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1), (b)(1)(B).  The Ninth Circuit has held that the discretionary authority to grant motions to intervene should be applied liberally. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011); *see also Nw. Env't*

*Advocs. v. U.S. Env't Prot. Agency*, No. 3:12-cv-01751, 2014 WL 1094981, at *2 (D. Or. Mar.

19, 2014) ("Regardless of what type of intervention is sought, the Ninth Circuit upholds a liberal

policy in favor of intervention."); *Or. Prescription Drug Monitoring Program v. United States*

*Drug Enf't Admin.*, No. 3:12-cv-02023, 2013 WL 12325112, at *2 (D. Or. Mar. 31, 2013)

(same).

### 3.    Timeliness

FRCP 24 requires that a motion to intervene be "timely," regardless of whether the

movant seeks mandatory or permissive intervention.  Fed. R. Civ. P. 24(a), (b)(1).  The

timeliness of intervention is not limited to chronological considerations but is "determined by the

totality of the circumstances facing would-be intervenors . . . ."  *Smith*, 830 F.3d at 854.  There

are no absolute measures of timeliness, and the "[m]ere lapse of time alone is not determinative."

*United States v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984).  When considering timeliness,

the Ninth Circuit applies the following factors: "(1) the stage of the proceeding at which an

applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length

of the delay."  *Smith*, 830 F.3d at 854 (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915,

921 (9th Cir. 2004)).  The Ninth Circuit applies the timeliness test more leniently for intervention

as of right.  *See State of Or.*, 745 F.2d at 552.

### B.    The 340B Program and 340B Drug Distribution

Established in 1992, the 340B Program is a voluntary drug pricing program that requires

participating drug companies to offer discounts on covered outpatient drugs to statutorily defined

safety-net health care providers, referred to as "covered entities," as a condition of the

companies' drugs being reimbursed by Medicaid and Medicare Part B.  42 U.S.C. § 256b(a)(1);

*id.* § 1396r-8(a)(1).  The 340B Program is administered by the Health Resources and Services

Administration ("HRSA"), which is a federal agency within the Department of Health and Human Services ("HHS").

The 340B Program makes drugs more affordable for covered entities. Those entities provide significant levels of uncompensated care, and the discounts available through the 340B Program help relieve that burden. H.R. Rep. No. 102-384, pt. 2, at 12 (1992). Many covered entities provide free or discounted drugs to their needy patients. The 340B discounts enable these covered entities to lose less money on drugs provided to their uninsured and underinsured patients. The savings the program allows covered entities to be more generous with subsidizing patient care for needy patients, including reducing or waiving patient copayments at the pharmacy counter. The 340B Program also generates revenue for covered entities so they are less dependent on taxpayer support. If a covered entity patient has prescription drug coverage, the difference between the insurer's payment for the drug and the discounted 340B price paid by the covered entity is income to the covered entity to supplement federal funds, thus allowing the covered entity "to stretch scarce federal resources as far as possible and enabling it to reach more eligible patients and provide more comprehensive services." *Id.* at 12. The only way for covered entities to realize revenues on the purchase of 340B drugs is if the covered entity submits claims to insurers for 340B drugs, which is exactly what the 340B Program intends. *Genesis Health Care, Inc. v. Becerra*, 701 F. Sup. 3d 312, 316 (D.S.C. 2023) ("Put simply, the purpose of the 340B Program was to provide a means to make 340B entities profitable in order for those 340B entities to 'stretch scarce Federal resources as far as possible.'") (quoting H.R. Rep. No. 102-384, pt. 2, at 12 (1992)).

Most illnesses and injuries cannot be adequately treated or managed without the patient taking one or more medications. That means that providers of health care—such as OPCA's

members—must ensure that their patients have access to a pharmacy to fill their prescriptions. For this reason, some providers own and operate their own pharmacies, often referred to as "in-house" pharmacies. However, because the construction and management of a pharmacy is expensive and requires special expertise, many providers contract with independently owned pharmacies to meet the pharmacy needs of their patients. In most cases, these contract pharmacies are within the provider's service area, making them convenient and accessible to the provider's patients. Typically, drugs dispensed by contract pharmacies are purchased under what is referred to as a "bill to/ship to" arrangement—the drugs are billed to the covered entity and shipped to the contract pharmacy. *See* HRSA, *FAQ: Contract Pharmacy, What is a "ship to bill to" arrangement?* (last visited Dec. 12, 2025), https://www.hrsa.gov/opa/faqs. The provider purchases the drugs but does not take physical possession of them. *Id.* A wholesaler ships the drugs to the contract pharmacy, which then takes physical custody of the drugs and dispenses them on the covered entity's behalf. *Id.*

It became abundantly clear after passage of the 340B statute in 1992 that, if covered entities did not possess the right to acquire drugs through bill to/ship to arrangements, many of them—specifically those lacking in-house pharmacies—would never have been able to participate in the 340B Program, even though they clearly met the eligibility criteria established by Congress. HRSA thus informed covered entities that they could still participate by issuing guidance in 1996 that explicitly recognized covered entities' existing right under state law to use bill to/ship to arrangements for meeting the pharmacy needs of their patients. Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,552 (Aug. 23, 1996).

## C.    Restrictive Manufacturer Policies

For nearly three decades, every drug company participating in the 340B Program honored bill to/ship to arrangements and treated contract pharmacies the same as in-house pharmacies. That changed abruptly, however, in July 2020, when one manufacturer after another either fully eliminated or significantly restricted distribution of 340B drugs ordered through bill to/ship to arrangements.  *See, e.g.*, AbbVie, Contract Pharmacy Policy (Nov. 1, 2025), https://340besp.com/resources/abbvie/policy.pdf; AstraZeneca, 340B Contract Pharmacy Pricing (Aug. 17, 2020), https://www.340bhealth.org/files/AstraZeneca_Retail_Communication_-_340B_-_Final.pdf?_zs=Ccipc1&_zl=DaI27; *see also* Letter from Diana Espinosa, Acting Adm'r, HRSA, to Dan Lupock, Managed Market Finance, Novartis Pharms. Corp. (May 17, 2021), https://www.hrsa.gov/sites/default/files/hrsa/opa/hrsa-letter-novartis-pharmaceuticals-covered-entities.pdf.  As of the date of this filing, at least forty drug companies have unilaterally imposed restrictions on contract pharmacy arrangements.[1]  These restrictions have reduced the resources available to covered entities to meet the needs of their vulnerable patients, including the need for affordable and accessible prescription drugs.

_____

[1] According to publicly available information, the following drug companies have restricted delivery of 340B drugs as of the date of filing this brief: AbbVie, Alkermes, Amgen Inc., Astellas Pharma Inc., AstraZeneca Pharmaceuticals LP, Bausch & Lomb Americas, Bayer, Biogen, Boehringer Ingelheim Pharmaceuticals, Inc., Bristol Myer Squibb, Eisai, Eli Lilly and Company, EMD Serono, Exelixis, Genentech, Gilead Sciences, Inc., GlaxoSmithKline, Incyte, Jazz Pharmaceuticals, Johnson & Johnson, Liquida, Mallinckrodt Pharmaceuticals PLC, Merck and Company, Mitsubishi Tanabe Pharma America, Novartis Pharmaceuticals Corporation, Novo Nordisk, Inc., Organon & Co., Pfizer Inc., Puma Biotechnology,  Sandoz, Sanofi-Aventis US LLC, Sobi, Sumitomo, Takeda Pharmaceuticals, Teva Pharmaceuticals, UCB, United Therapeutics, Vertex, and Viatris. *See 340B ESP Resources*, 340B ESP, https://www.340besp.com/resources (last visited Dec. 10, 2025)); *Contract Pharmacy Restrictions Tracker*, 340B Report (last visited Dec. 10, 2025) https://340breport.com/contract-pharmacy-restrictions-tracker/.

In response to these unprecedented policies, HHS wrote enforcement letters to manufacturers informing them that such restrictions on contract pharmacy arrangements violated the 340B statute. *See, e.g.*, Letter from Carole Johnson, Adm'r, HRSA, to Chris Compisi, Vice President, AbbVie, Inc. (Oct. 17, 2022), https://www.hrsa.gov/sites/default/files/hrsa/opa/programintegrity/hrsa-letter-abbvie-covered-entities.pdf.  Several manufacturers then sued HHS in several federal district courts to challenge HRSA's enforcement letters seeking, among other actions, an order that HHS's enforcement letter was invalid.  The results at the district court level varied, and the cases were appealed to the Third Circuit, D.C. Circuit, and Seventh Circuit.  While the Seventh Circuit has yet to issue a decision, the Third Circuit and D.C. Circuit both held that HHS lacked authority to invalidate the manufacturers' policies.  *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 706 (3d Cir. 2023); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 461 (D.C. Cir. 2024).  These decisions apply strictly to HHS, which is not charged with administering Oregon's H.B. 2385, and apply only to the agency's authority under the 340B statute—not H.B. 2385.

Many of PhRMA's members currently maintain and enforce contract pharmacy restrictions. While policies differ, many apply to all covered entity types.  Some manufacturers condition the delivery of 340B-priced drugs to contract pharmacies on the covered entities' submission of claims data, and/or geographically restrict the covered entity's one designated contract pharmacy to a 40-mile radius of its parent site.  A few PhRMA's members have explicitly exempted Oregon covered entities from their policies to comply with H.B. 2385.  *See, e.g.*, Sobi, Inc., 340B Contract Pharmacy Pricing (Nov. 1, 2025), https://340besp.com/resources/sobi/policy.pdf; Sumitomo Pharma, 340B Contract Pharmacy

PROPOSED INTERVENOR OREGON PRIMARY CARE                    Page 11
ASSOCIATION'S MOTION TO INTERVENE

Pricing (July 17, 2025), https://340besp.com/resources/sumitomo/policy.pdf.  However, many PhRMA members' policies do not exempt Oregon covered entities.

### D.    Oregon H.B. 2385

H.B. 2385 prohibits manufacturers from blocking or otherwise interfering with the 340B bill to/ship to arrangements between covered entities in Oregon and pharmacies they contract with.  Consistent with the state's authority to regulate drug distribution within its borders, the statute protects 340B contract pharmacy arrangements under two provisions.  First, H.B. 2385 § 1(2)(a) prohibits a drug manufacturer from denying, restricting, or prohibiting, or otherwise interfering with the delivery of a 340B drug to a contract pharmacy that is receiving the drugs on behalf of a covered entity located in Oregon.  Second, H.B. 2385 § 1(2)(b) prohibits a manufacturer from requiring a covered entity to submit a claim or utilization review data as a condition of the delivery of 340B drugs to a contract pharmacy that is receiving the drugs on behalf of a covered entity located in Oregon.  A violation of H.B. 2385 may result in the imposition of civil penalties by the Oregon Board of Pharmacy.  H.B. 2385 § 2.

On September 26, 2025, PhRMA filed suit in this Court, arguing that H.B. 2385 is preempted by the 340B statute and violates the Constitution's prohibition on state extraterritorial regulation.  Compl., ECF No. 1.  On November 18, 2025, the Court adopted a scheduling order, under which Plaintiff's motion for summary judgement was due November 20, 2025, and Defendants' cross-motion and response is due on January 16, 2026. Sched. Ord., ECF No. 31.  The parties have agreed that they will not seek discovery in this case.  ECF No. 24.  PhRMA filed its motion for summary judgment on November 20, 2025.  Pl's MSJ, ECF No. 32.  Defendants will not file an answer unless the Court determines that an answer is necessary after

reviewing the parties' motions for summary judgment.  ECF 24.  The proceedings in this case are at their very early stages.

<u>**ARGUMENT**</u>

OPCA is entitled to mandatory intervention because it has moved for intervention in a timely manner, it has a significant, legally protectable interest in the outcome of this litigation, and its interest is not adequately represented by Defendants.  In the alternative, OPCA should be granted permissive intervention because intervention will not unduly delay or prejudice an existing party, OPCA's motion is timely, and OPCA's interests present common questions of law and fact with the current litigation.

## I.    OPCA's Motion to Intervene is Timely

FRCP 24 requires that a motion to intervene, whether as of right or permissively, be "timely."  *See* Fed. R. Civ. P. 24(a), (b)(1).  The Ninth Circuit applies the same three-factor test for both types of intervention and examines: (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.  *Smith*, 830 F.3d at 854; *Alisal Water Corp.*, 370 F.3d at 921.  Timeliness is "determined by the totality of the circumstances," *Smith*, 830 F.3d at 854, and is a "flexible concept" left to the district court's discretion.  *Alisal Water*, 370 F.3d at 921.  Mere lapse of time is not determinative; courts focus on whether intervention will disrupt the case or prejudice existing parties.  *Smith*, 830 F.3d at 854.  The Ninth Circuit applies these factors more leniently for intervention as of right, recognizing the stronger interests at stake.  *See State of Or.*, 745 F.2d at 552.  Regardless of how strictly these factors are applied, the result is the same: this motion is timely.  Defendants do not oppose OPCA's intervention.  The timeliness requirement is primarily intended to protect the interests of the existing parties, so Defendants' lack of objection to intervention weighs in favor of timeliness.

The first timeliness factor favors intervention because this case is still at an early stage. "In this inquiry, substance prevails over form," requiring a "nuanced, pragmatic approach" to determine if the court "has substantively—and substantially—engaged the issues in [the] case." *Kalbers v. United States Dep't of Justice*, 22 F.4th 816, 826 (9th Cir. 2021) (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997)).   Here, the parties and this Court have "covered scarcely any legal ground together" that has "meaningfully advance[d]" resolution of the case. *Id.*  The Court has held no hearings and has made no rulings beyond those related to scheduling and pro hac vice admission. *See, e.g.*, Scheduling Order (Sept. 29, 2025), ECF No. 3; Pro Hac Vice Order (Nov. 17, 2025), ECF No. 30; Scheduling Order (Nov. 18, 2025), ECF No. 31.  Responsive pleadings have been deferred indefinitely, and the parties have agreed to skip discovery. Scheduling Order (Nov. 18, 2025), ECF No. 31.  The Court therefore has not yet substantively or substantially engaged the issues in this case, nor will it until after summary judgment briefing is completed later next year. Scheduling Order (Nov. 18, 2025), ECF No. 31. "In other words, far from 'derailing a lawsuit within sight of the terminal,'" OPCA has "sought to intervene just as this case began gathering speed." *Id.* (quoting *United States v. Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989)); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (upholding timeliness finding when "intervention motion was filed at a very early stage, before any hearings or rulings on substantive matters").

The second, and most important, timeliness factor also favors intervention because the parties will not suffer any prejudice.  *See United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (stating prejudice is "the most important consideration in deciding whether a motion for intervention is untimely").  Parties are prejudiced by intervention if it will "inject new issues into the litigation," *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007), or "would complicate the

issues and prolong the litigation." *United States v. Washington*, 86 F.3d 1499, 1504 (9th Cir.

1996).  Here, OPCA does not seek to inject any new issues or complicate or prolong those

already in play.  On the contrary, OPCA agrees to join the case as it finds it, including the

existing summary judgment briefing schedule.[2]  Indeed, where a party "offer[s] to comply with

the existing summary judgment briefing schedule," there is a "lack of prejudice" that "weighs

heavily in favor of timeliness." *Kalbers*, 22 F.4th at 826.

  The third timeliness factor—reasonable delay—likewise favors intervention. "Delay is

measured from the date the proposed intervenor should have been aware that its interests would

no longer be protected adequately by the parties, not the date it learned of the litigation."

*Washington*, 86 F.3d at 1503.  But "[t]imeliness is not just a matter of counting days[;]" it is

based on "the totality of circumstances."  *Abdurahman v. Alltran Fin., LP*, 330 F.R.D. 276, 280

(S.D. Cal. 2018) (citing *Smith v. Los Angeles Unified School Dist.*, 830 F.3d 843, 854 (9th Cir.

2016)).  Among the things courts consider is the size and legal sophistication of the membership

and staff of an association seeking intervention. *See NAACP v. New York*, 413 U.S. 345, 366

(1973).  In fact, it is legal error for a district court to not consider such factors.  *See Smith*, 830

F.3d at 861 (finding delay by "consortium of parents" to organize and prepare for intervention

was reasonable). Courts also often find that delays due to locating counsel and preparing a

motion are reasonable. *See, e.g.*, *Harris v. City of L.A.*, No. EDCV 24-2679 JGB (DTBx), 2025

WL 1717650, at *3 (C.D. Cal. Apr. 30, 2025) (finding two-month delay "reasonably explained

by [intervenor's] seemingly diligent efforts to locate counsel and author its motion for

intervention"); *EEOC v. Logic Staffing LLC*, No. 2:24-cv-1557-BJR, 2025 WL 835032, at *1

---

[2] If OPCA's motion is granted after Defendants' response deadline, OPCA is willing to file its response within two business days of the Court's order allowing intervention.

(W.D. Wash. Mar. 17, 2025) (finding "delay of a few months" reasonable "due to the time it took for [intervenor] to find suitable counsel and prepare [an intervention pleading]"); *Abdurahman*, 330 F.R.D. at 280 (finding four-month delay reasonable where intervenor took time to hire outside counsel, review the case, collect evidence, discus legal options, and make final intervention decision).

Here, the clock only started running on August 20, 2025. That day, the Oregon Board of Pharmacy, in consultation with the Oregon Department of Justice, voted to forbear enforcing H.B. 2385 after it became effective. 2025 Special August Board Meeting Summary, Oregon Board of Pharmacy (Aug. 20, 2025), https://www.oregon.gov/pharmacy/Documents/August_20_2025_Special_Bd_Meeting_Summary.pdf. As discussed in more detail later, that decision was not in OPCA's interest nor in the interests of its members, who are negatively impacted every day the law is not being enforced. Thus, Defendants' decision, rather than Plaintiff's complaint, marks when OPCA had reason to know its interests would not be adequately represented by the existing parties.

OPCA worked diligently in seeking to intervene. Notably, OPCA has no in-house counsel or regular outside counsel, nor does its staff have much experience with litigation. Tranchese Decl. ¶ 14. OPCA therefore had to identify, interview, and select outside counsel familiar with both litigation and the 340B program before it could fully understand and evaluate what its options were. *Id.* ¶ 15. OPCA also had to consult with its thirty-three members—who vary in size and legal sophistication—about the myriad factors bearing on whether and how to proceed with defending H.B. 2385. *Id.* ¶ 16.

The totality of circumstances bearing on intervention also extends beyond this case. Whether by coordination or coincidence, *four* lawsuits seeking to strike down H.B. 2385 were

filed over the course of as many months between July and November 2025.[3]  Each suit raises

different claims that OPCA and its counsel have had to evaluate in relation to each other.  The

time OPCA took to evaluate this complex procedural landscape, coordinate its position, conduct

multiple conferrals, prepare multiple motions (one of which has already been granted), and

proceed with intervention in a coherent manner reflects due diligence, not undue delay.  The time

that elapsed between when OPCA could have known it needed to intervene and when it formally

did so was reasonable under the circumstances.

      With all of that in mind, OPCA ultimately sought to intervene within a reasonable time.

OPCA sought to confer with Plaintiff about intervention in this case on November 24, 2025,

essentially three months after the State's decision to not enforce H.B. 2385.  Samuels Decl. ¶ 1.

This motion followed soon after that conferral ran its course, *id.* ¶ 5, bringing it well within the

timeframe courts have found to be reasonable.  *See, e.g.*, *Western Watersheds Project v.

Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (finding three-month delay was reasonable);

*Abdurahman*, 330 F.R.D. at 280 (finding four-month delay reasonable); *Martin v. La Luz Del

Mundo*, No. 2:20-cv-01437-ODW-(ASx), 2020 WL 5797896, at *3 (C.D. Cal. Sep. 29, 2020)

(same); *Innovations4Flooring Holding, N.V. v. Wellmade Flooring Coverings, Int'l, Inc.*, No.

3:19-cv-00299-HZ, 2019 WL 13269517, at *2 (D. Or. Oct. 7, 2019) (finding delay of "less than

four months" reasonable). Courts have even found intervention to be timely within this

timeframe when no reason at all was given for the delay.  *See, e.g.*, *Ambler v. Flathead

Conservation Dist.*, No. CV 23-151-M-KLD, 2024 WL2723954, at *2 (D. Mont. May 28, 2024)

---

[3] The four cases are: *AbbVie v. Rayfield*, No. 6:25-cv-01332 (D. Or. 2025); *AstraZeneca
Pharmaceuticals v. Rayfield*, No. 3:25-cv-02042 (D. Or. 2025); *Novartis Pharmaceuticals v.
Joyce*, No. 3:25-cv-01330 (D. Or. 2025); and *Pharmaceutical Researchers and Manufacturers of
America v. Rayfield*, No. 3:25-cv-01754 (D. Or. 2025).

(finding motion timely because unexplained four-month delay was "not extraordinary"); *SFR Invs. Pool 1, LLC v. Newrez LLC*, No. 2:22-cv-00626-GMN-EJY, 2023 WL 3341918, at *3-4 (D. Nev. May 10, 2023) (finding motion timely because unexplained six-month delay was "not extraordinary"); *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2019 WL 9443778, at *5 (N.D. Cal. Nov. 19, 2019) (same); *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST, 2013 WL 6139713, at *3 (N.D. Cal. Nov. 21, 2013) (finding motion timely because unexplained seven-month delay was "not extraordinary").

## II.    OPCA Is Entitled to Intervene as of Right

OPCA satisfies the Ninth Circuit's four-part test for intervention as of right, which is construed liberally. *Smith*, 830 F.3d at 853; *see also City of Emeryville v. Robinson*, 621 F.3d 1251, 1258 (9th Cir. 2010) ("Rule 24(a) traditionally receives a liberal construction in favor of applicants seeking intervention."); *Bresgal v. Brock*, 637 F. Supp. 271, 272 (D. Or. 1985) (same). OPCA has an interest in this litigation because its members rely on 340B contract pharmacies to receive and dispense needed medications for their patients, many of whom are medically vulnerable or underinsured. OPCA's interests will be impacted by the litigation because H.B. 2385 protects the right of OPCA's members to use contract pharmacy arrangements for ordering, receiving, and dispensing 340B drugs to their patients. In addition, Defendants do not adequately represent OPCA's interests, which differ from, and in some respects conflict with, the Defendants' interests.

### A.    OPCA Has an Interest Relating to the Property or Transaction That Is the Subject of This Action

OPCA has an interest in this litigation because it participated in the drafting of H.B. 2385 and advocated for its enactment. Tranchese Decl. ¶ 11; *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526 (9th Cir. 1983) (finding sufficient interest when intervenor "participated actively

in the administrative process" of the action in question); *id.* at 527 (summarizing *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) as allowing intervention in an action for "a cause that that organization had championed"); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (finding sufficient interest when intervenor was "active in the process" in which intervention was being considered). OPCA worked with lawmakers, legislative attorneys, and legislative staff to provide technical expertise. *Id.* ¶ 11. OPCA also took more than 120 "advocacy actions" including phone calls, letters, emails, and meetings with lawmakers. *Id.* ¶ 12. OPCA staff members also engaged in targeted, individualized advocacy efforts by speaking directly with legislators to educate them on the need for H.B. 2385. *Id.* ¶ 13. OPCA thus has a strong interest in defending H.B. 2385.

OPCA also has an interest in this litigation because its members are the intended beneficiaries of H.B. 2385. *Lockyer,* 450 F.3d at 441 (holding that intervenors had a "significant protectable interest" when they were the intended beneficiaries of the challenged law) (cleaned up). OPCA's members are all 340B covered entities, Tranchese Decl. ¶ 5, and H.B. 2385 expressly applies to covered entities. Oregon enacted H.B. 2385 specifically so that safety-net health care providers that participate in the 340B Program, such as OPCA's members, can direct shipment of discounted drugs to community pharmacies near their patients. That is critical because OPCA's members rely heavily on contract pharmacies to provide 340B medications to their medically vulnerable and underinsured patients at reduced cost at locations accessible to them. Tranchese Decl. ¶¶ 6, 9.

Finally, OPCA has a direct and substantial interest in the outcome of this litigation because H.B. 2385 protects the rights of OPCA's members to enter into contract pharmacy arrangements to order and receive 340B drugs without manufacturer interference. In addition to

reducing costs for patients, contract pharmacy arrangements also generate savings and revenue

for OPCA's members so they can provide more services to more Oregonians at no cost to

taxpayers.  *Id.* ¶¶ 7–10.  OPCA members therefore have an significant interest in defending H.B.

2385.  *See E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir.), *cert. denied sub*

*nom. Kansas v. Mayorkas*, 145 S. Ct. 415 (2024) (while an "economic interest may be sufficient

to support a right of intervention," it "must be concrete and related to the underlying subject

matter of the action."); *Alisal Water Corp.*, 370 F.3d at 919–20 (same); *United States v. Brooks*,

164 F.R.D. 501, 504 (D. Or.), *adhered to*, 163 F.R.D. 601 (1995) ("Given that the outcome of

this case will have a direct economic impact on [proposed intervenor], the disposition of this

action obviously will impair or impede its ability to protect that economic interest."); *see also*

Mem. Ruling at 6, *AbbVie v. Landry*, No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024), ECF No. 58

("The Court finds LPCA's position that . . . it has an interest in the outcome of this litigation

compelling" in lawsuit challenging a Louisiana law similar to H.B. 2385); Order at 6, *Pharm.*

*Rsch. & Mfs. of Am. v. McClain*, 4:21-cv-00864 (E.D. Ark. May 3, 2022), ECF No. 22 ("Because

[covered entity] Intervenors have demonstrated recognizable economic interests in the present

lawsuit [challenging an Arkansas law similar to H.B. 2385], their alleged interests . . . are

sufficiently direct, substantial, and legally protectable to allow them to intervene in the case.").

OPCA's interests are both "concrete" and "related to the underlying subject matter of the

action."  *E. Bay Sanctuary Covenant*, 102 F.4th at 1002; *Alisal Water Corp.*, 370 F.3d at 919–20.

Until July 2020, every drug company participating in the 340B Program recognized a 340B

covered entity's right to dispense its 340B drugs through an unlimited number of contract

pharmacies.  Now, at least forty drug companies have implemented policies that restrict

distribution of 340B drugs to contract pharmacies.  *See 340B ESP Resources*, 340B ESP,

https://www.340besp.com/resources (last visited Dec. 10, 2025); *Contract Pharmacy Restrictions Tracker*, 340B Report (last visited Dec. 10, 2025), https://340breport.com/contract-pharmacy-restrictions-tracker/.  The manufacturer policies differ, often including complicated exceptions or conditions, including the categories of covered entities to which the policy applies.[4]

Thus, OPCA's members and their patients face an imminent threat of significant harms that H.B. 2385 is intended to prohibit.  PhRMA's challenge to this law, if successful, would allow drug companies to *continue* to prevent distribution of 340B drugs purchased by OPCA members and other Oregon covered entities for dispensing at contract pharmacies.  That possibility would perpetuate and probably expand the economic and clinical harm to OPCA's members and their patients caused by the policies of PhRMA's members.  *Cf. Citizens for Balanced Use*, 647 F.3d at 898 (finding "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect" intervenor's interest) (quoting *Lockyer,* 450 F.3d at 442)); *State of Or.*, 839 F.2d at 638 (concluding that the stare decisis effect "directly involve[ing] the conditions" at an institution were sufficient to impair intervenor's interests.).  OPCA's interest in protecting its members and their patients from that outcome is undeniable.

### B.    OPCA's Interests Will Be Impaired by the Disposition of the Litigation

PhRMA seeks an order to invalidate H.B. 2385 which, if granted, would subject OPCA's members to onerous claims-submission procedures and the perpetual threat of PhRMA's

---

[4] For example, prior to November 1, 2023, Bristol Myers Squibb imposed contract pharmacy restrictions only on hospital covered entities but revised its policies effective July 10, 2025 to apply to all covered entities, including FQHCs (also referred to as community health centers or CHCs). *Compare* Email from Bristol Myers Squibb to 340B Customers (Jan. 14, 2022), https://www.340bhealth.org/files/Bristol_Myers_Squibb_email_01-14-22.pdf *with* Notice Regarding Bristol Myers Squibb 340B Practice, Bristol Myers Squibb (July 10, 2025), https://340besp.com/resources/bristol_myers_squibb/policy.pdf.

members—and other drugmakers—terminating delivery of 340B drugs to Oregon contract pharmacies entirely. Invalidating H.B. 2385 could therefore harm both the fiscal health of OPCA's members and impede their ability to meet their missions of providing care for any patient regardless of ability to pay. Without intervention, disposition of the current action will "as a practical matter impair or impede" OPCA's interests and those of its members. *Citizens for Balanced Use*, 647 F.3d at 897 (quoting Fed. R. Civ. P. 24(a)(2)); *Berg*, 268 F.3d at 817.

The prospect of manufacturers being able to restrict or eliminate contract pharmacy shipments ordered by OPCA's members is especially alarming. Thirteen OPCA members do not operate in-house pharmacies and rely exclusively on outside retail pharmacies to order, receive, and dispense 340B drugs. The requirements to obtain a pharmacy license are complex and operating an in-house pharmacy is expensive. Even OPCA members that do operate in-house pharmacies rely on contract pharmacies to serve their patients because the contract pharmacies are more conveniently located where their patients live or work. Tranchese Decl. ¶ 6. Without the ability to order, receive, and dispense self-administered drugs at 340B discounts through contract pharmacies, OPCA members cannot meet the pharmacy needs of their patients. *Id.* ¶¶ 7–9. If this lawsuit is decided in favor of PhRMA, OPCA members and other 340B covered entities in Oregon will be subject to unilateral manufacturer policies that prohibit or severely restrict their ability to order and receive 340B drugs at contract pharmacies. PhRMA's members may, in effect, choose to eliminate the benefit of contract pharmacy arrangements, which OPCA's members have relied upon for more than 25 years. *See Citizens for Balanced Use*, 647 F.3d at 898 (proposed intervenor must show only that interest "may" be impaired or impeded by litigation).

OPCA members use 340B savings and revenue from drugs shipped to contract pharmacies to provide vital safety-net services to impoverished patients and communities. Distribution of 340B drugs at contract pharmacies is, therefore, a vital component of Oregon's public health care system. The refusal of drug companies to distribute 340B-priced drugs to contract pharmacies will result in lack of access to discounted drugs for financially needy patients which, in turn, will likely require a change in their treatment regimen or cause them to forgo prescribed medications. Tranchese Decl. ¶ 8. And with reduced savings from 340B drugs, OPCA's members may be forced to reduce or eliminate the services that they provide to patients, resulting in harm to the patients and the prospect of more expensive health care services. In short, invalidating H.B. 2385 would cause serious hardship to OPCA's members and their vulnerable patients. And such a decision would be legally binding on OPCA, its members, and every covered entity in Oregon. *Cf. State of Or.*, 839 F.2d at 638 (intervenor successfully showed that its interests may be impaired by the operation of stare decisis effect as a result of the litigation); *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981) (same); *see also* Mem. Ruling at 6, *AbbVie v. Landry,* No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024), ECF No. 58 ("The Court finds LPCA's position that . . . it has an interest in the outcome of this litigation compelling.").

### C.    OPCA's Interests Are Not Adequately Protected by the Parties

OPCA more than meets the "minimal" burden of showing that its interests are not adequately represented by the parties. *Berg*, 268 F.3d at 823; *Citizens for Balanced Use*, 647 F.3d at 898 (considering "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."). PhRMA clearly

does not represent OPCA's interests because it seeks to invalidate a law that was enacted to protect OPCA members.

Defendants' broad interests in protecting the constitutionality of H.B. 2385 and its ability to enforce that law differ from OPCA's narrower interests in contract pharmacy arrangements.[5] *Berg*, 268 F.3d at 823–24 ("On some issues [intervenors] will have to express their own unique private perspectives and in essence carry forward their own interests."); *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) ("[I]nterests of [intervenors] were potentially more narrow and parochial than the interests of the public at large."). OPCA can rebut the general presumption that the government is adequately representing its interests because there exists "distinctly different, and likely conflicting, interests" in this case. *Lockyer*, 450 F.3d at 444; *see also Citizens for Balanced Use*, 647 F.3d at 899 (finding the presumption rebutted even when "both entities occupy the same posture in the litigation.") (citing *WildEarth Guardians v. U.S. Forest Serv.,* 573 F.3d 992, 996 (10th Cir. 2009)).

OPCA's members rely on 340B contract pharmacy arrangements to supplement their federal funding and to enable their patients to access 340B drugs at convenient locations. Defendants' interests in defending the law are not the same type of practical interests that prompts OPCA to request intervention. Defendants have a "broad public interest" to protect the

---

[5] An intervenor seeking the same relief as a defendant is not required to establish standing. *Washington v. FDA*, 108 F.4th 1163, 1172 (9th Cir. 2024) (explaining that "intervenors that seek the same relief sought by at least one existing party ... need not [establish independent Article III standing.]"); *see also McConnell v. FEC*, 540 U.S. 93, 233 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). Here, OPCA seeks the same relief as the Defendants—the Court's upholding of Oregon's H.B. 2385. OPCA nonetheless has standing because its members are injured by the conduct that Oregon H.B. 2385 is intended to remedy.

PROPOSED INTERVENOR OREGON PRIMARY CARE                                          Page 24
ASSOCIATION'S MOTION TO INTERVENE

public at large, whereas OPCA seeks to advance the "narrow, parochial interests of" its own

members. *Forest Conservation Council*, 66 F.3d at 1499; *Mendonca*, 152 F.3d at 1190; *Allied*

*Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067–68 (9th Cir. 2018). OPCA and its

members share a mission of supporting public health in Oregon, but their first priority is keeping

the health centers' doors open and the lights on. In that regard, they need H.B. 2385 to be

implemented and enforced as soon as possible.

Defendants' lack of urgency in enforcing H.B. 2385 is clearly an area in which

Defendants' and OPCA's interests diverge. In August, the Oregon Board of Pharmacy voted to

"forbear enforcement of H.B. 2385 until the Court issues final judgment" in two separate drug

manufacturer cases and waived the right to seek penalties later for conduct during this period.

Or. Bd. of Pharmacy, 2025 Special August Board Meeting (Aug. 20, 2025),

https://www.oregon.gov/pharmacy/Documents/August_20_2025_Special_Bd_Meeting_Summar

y.pdf (adding that the "Board will not take any enforcement action or otherwise assess liability

under H.B. 2385 for any conduct that occurred during the Period of Forbearance as made and

unanimously carried."). Resolution of the pending court cases could take years, especially if

appeals are filed, which is likely. In the meantime, manufacturers may impose their restrictions

with impunity. Every day that passes without enforcement of H.B. 2385, covered entities receive

less savings and revenue to meet the primary healthcare needs of their patients.

The Board of Pharmacy's decision to delay enforcement of H.B. 2385 was

unquestionably against the interest of OPCA and its members. It demonstrates how Defendants

have already prioritized their interests over that of OPCA's members. Defendants' delay and

waiver of H.B. 2385's enforcement *even if it is ultimately found to be constitutional* at the end of

this litigation illustrates how OPCA cannot rely on the Defendants to represent its interests in

this case.  Having shown that their interests diverge from the interests of OPCA and its members, it cannot be said that Defendants "will undoubtedly make all of a proposed intervenor's arguments" or that they are "capable and willing to make such arguments."  *Citizens for Balanced Use,* 647 F.3d at 898.  Indeed, by not opposing OPCA's intervention in any of the H.B. 2385 cases, Defendants tacitly concede that there is a role for OPCA to play in representing its own unique interests in defending the law.

The 340B Program is a lifeline to OPCA members' survival and the health of their patients.  *See, e.g.*, Tranchese Decl. ¶¶ 5–10.  The contract pharmacy restrictions unilaterally imposed by PhRMA's members threaten that lifeline.  The Oregon legislature responded to OPCA's pleas for help by enacting H.B. 2385, but Defendants do not have the same burning interest to protect H.B. 2385 as OPCA.  Defendants' interests are not, therefore, wholly aligned with OPCA's interests.

## III.    OPCA Satisfies the Standards for Permissive Intervention Under FRCP 24(b)(2)

In addition to meeting the requirements for intervention as a matter of right under FRCP 24(a), OPCA meets the requirements for permissive intervention under FRCP 24(b).  OPCA "shares with the main action a common question of law or fact" regarding the legality of H.B. 2385.  Fed. R. Civ. P. 24(b)(1)(B).  OPCA has a claim or defense that is timely and will not unduly prejudice or delay the adjudication of the parties' rights.  *Cf.* Mem. Ruling, *AbbVie v. Landry*, No. 6:23-cv-01307 (W.D. La. Mar. 7, 2024), ECF No. 58 (granting intervention to Louisiana Primary Care Association).  Likewise, other discretionary factors weigh in favor of intervention.  *Novalpina Cap. Partners v. Read*, 149 F.4th 1092, 1100–01 (9th Cir. 2025); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

A.    **Intervention Will Not Cause Undue Delay or Prejudice**

Permitting OPCA to intervene will not result in undue delay or prejudice to the existing parties. *See* Fed. R. Civ. P. 24(b)(3). In *Audubon Soc'y of Portland v. Jewell*, No. 1:17-cv-00069, 2017 WL 9471665, at *5 (D. Or. Mar. 27, 2017), this Court found "no risk of delay or prejudice" where the intervenors filed their answer concurrently with the motion and before the court had substantively engaged the issues. OPCA is seeking intervention before Defendants' deadline to file a cross-motion for summary judgment. OPCA will meet Defendants' deadline of January 16, 2026, to file such a motion if allowed to intervene before then or else it will be ready to file within two business days if intervention is granted after. ECF No. 31. Additionally, OPCA is seeking intervention before the Court has addressed the merits of any parties' pleadings and is prepared to proceed under the existing scheduling order without any modification. As in *Jewell*, OPCA's participation will not burden the Court or existing parties and will facilitate efficient resolution of the case.

In contrast, the Ninth Circuit has affirmed denials of permissive intervention where a proposed intervenor's participation would "consume additional time and resources" and likely delay the case. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955–56 (9th Cir. 2009). The circumstances here are fundamentally different. All parties have consented to OPCA's participation, eliminating any contention that intervention would be prejudicial. OPCA is fully prepared to proceed under the Court's scheduling order, ECF No. 31, and seeks no modification of the deadlines already set by the Court. Unlike the intervenor in *Perry*, OPCA does not seek to expand the litigation or raise issues beyond those already presented. Its participation will therefore not burden the Court or the existing parties, or delay adjudication of the merits.

In addition, OPCA represents members directly affected by PhRMA members' restrictive contract pharmacy policies, the very practices challenged in this suit.  OPCA's ability to supply real-world context and factual information will facilitate, not impede, the efficient resolution of the case.  Providing the Court with a more complete understanding of the real-world impact of the challenged policies will streamline the presentation of evidence and clarify the issues in dispute.  Because OPCA's involvement will neither delay the proceedings nor prejudice the existing parties, FRCP 24(b)(3) is satisfied.

### B.    OPCA Brings a Claim or Defense That Shares a Common Question of Law or Fact

OPCA's defenses plainly share common questions of law and fact with the claims and defenses raised in this litigation, satisfying the requirements of FRCP 24(b)(1)(B).  The Ninth Circuit interprets the commonality requirement in FRCP 24(b)(1)(B) under the rule's "plain meaning" and emphasizes that the threshold is minimal: a common question exists whenever the intervenor's defense raises any question of law or fact also present in the main action.  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).  In *Kootenai Tribe*, the Ninth Circuit upheld permissive intervention because the intervenors' defenses were "directly responsive" to the plaintiffs' challenge to the legality of a government action.  *Id.* at 1110.  The Ninth Circuit further clarified that a proposed intervenor need not satisfy FRCP 24(a)'s "protectable interest" requirement to qualify for permissive intervention.  *Id.* at 1110–11.[6]

This Court has applied those principles directly.  In *Audubon Society of Portland v. Jewell*, this Court granted permissive intervention because the intervenors' defenses and the

---

[6] Although FRCP 24(b) does not require a showing of a "protectable interest," OPCA nonetheless has a protectable interest, as explained in Section II.

plaintiffs' claims both raised the same question—the legality of the challenged action.  2017 WL 9471665, at *5.  This Court concluded that the shared legal question was sufficient to support permissive intervention under FRCP 24(b).

The same principle applies here.  PhRMA challenges the legality and constitutionality of H.B. 2385.  OPCA seeks to assert defenses that address precisely the same operative facts and the same core legal question—whether H.B. 2385 is lawful.  As in *Kootenai Tribe* and *Jewell*, OPCA's defenses are directly responsive to the claims asserted and introduce no collateral issues.  Because OPCA's defenses share common questions of law and fact with the main action, the requirement of FRCP 24(b)(1)(B) is satisfied.

### C.    Other Discretionary Factors Support Permissive Intervention

Beyond the stated requirements of FRCP 24(b), courts may consider additional factors relevant to fairness and judicial efficiency of a proposed intervention.  The Ninth Circuit has recognized that, in exercising this discretion, a court may evaluate several additional factors, including the nature and extent of the intervenor's interest, the adequacy of representation by existing parties, the extent to which intervention would contribute to the development of the underlying factual record, and whether the intervenor's participation would promote the just and equitable adjudication of the legal issues presented.  *Novalpina*, 149 F.4th at 1100–01; *Spangler*, 552 F.2d at 1329.

These discretionary factors strongly support intervention by OPCA.  OPCA represents Oregon covered entities directly protected by H.B. 2385, and their interests are not fully represented by the existing parties.  OPCA is uniquely situated to provide critical facts and perspectives concerning the practical consequences of PhRMA members' policies.  That contribution will assist the Court in developing a complete factual record, consistent with the

Ninth Circuit's recognition in *Spangler* that intervention may be appropriate where it enhances the development of factual issues central to the case.  552 F.2d at 1329.

The Ninth Circuit has emphasized that permissive intervention is warranted where the intervenor's participation will provide insight beyond what existing parties can offer and aid the Court in its orderly consideration of significant legal questions.  *Novalpina*, 149 F.4th at 1100–01 (noting that the intervenor was "in a better position . . . to shed additional light" on the factors applied in that case); *Kootenai*, 313 F.3d at 1111 (recognizing permissive intervention is warranted where the intervenor's participation will aid the court in its orderly consideration of significant legal questions affecting broader interests).  Likewise, OPCA is better positioned than the existing parties to shed additional light on the real-world impact of PhRMA members' contract pharmacy restrictions and the importance of H.B. 2385 for covered entities.  Because OPCA's interests are substantial, its contributions will materially assist the Court, and its participation will promote the efficient and equitable resolution of this litigation, the discretionary factors under FRCP 24(b) weigh strongly in favor of granting permissive intervention.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## <u>CONCLUSION</u>

For the foregoing reasons, OPCA respectfully requests that the Court grant its motion to intervene as of right under FRCP 24(a) or, in the alternative, to allow it to intervene under FRCP 24(b).

Respectfully submitted,

LARKIN VACURA KAYSER LLP

*/s/ David G. Samuels*
Christopher J. Kayser (OSB #984244)
ckayser@lvklaw.com
David G. Samuels (OSB #206308)
dsamuels@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

*Attorneys for [Proposed] Intervenor*
*Oregon Primary Care Association*

Dated:  December 19, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 9,046 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ David G. Samuels*

David G. Samuels